United States v. Chavarin 1840-11 Good morning, and may it please the Court. In this case, the District Court applied a two-level sentencing enhancement for obstruction of justice without making the required findings under the Supreme Court's precedent in Dunnigan and this Court's precedent in Massey. In Dunnigan, the Supreme Court specifically explained that findings are required when an obstruction of justice enhancement is applied as a result of a defendant's election to testify in his own defense at trial. And the reason for this is because of the important Sixth Amendment concerns involved. In fact, in Dunnigan, the Supreme Court specifically identified a situation where a defendant presents a duress or coercion defense as one of the circumstances in which specific findings are particularly important. The findings that the Court was required to make was that there was a false statement under oath concerning a material matter and that there was a willful intent to provide false testimony. And again, in this Court's precedent, the Tenth Circuit's requirements are actually more stringent than those outlined in Dunnigan and requires that the District Court identify with particularity which statements are actually false. The District Court did not do that in this case. All the District Court said was that the defendant's defense was false and found that it was unfounded, in fact, in law. And that finding was insufficient under the Supreme Court's and this Court's precedent. Well, first of all, you seem to concede, at least in your reply brief, that you're under a plain error analysis here because you didn't object to the five findings. We didn't object to the lack of findings. That's correct. I think that the cases are somewhat ambiguous about whether there is that requirement in this particular context. In my reply brief, I did say that Dunnigan seems to imply that whenever this objection is lodged, there's sort of an automatic trigger that happens that requires the District Court to make these findings, again, because of the Sixth Amendment concerns and because there is this temptation to apply the obstruction of justice enhancement when a defendant goes to trial and testifies in his own defense. It's unclear whether this requirement, actually whether the requirement to specifically request particularized findings in this context is required under this Court's precedent. Are you saying this is a substantive objection and therefore not really waivable? I guess I have some confusion about this substantive... Procedural objection? I think, yes, but I have some confusion about the difference between substantive and procedural objections because there is some language in this Court's cases that say any objection to a sentencing enhancement is a procedural objection, and so I think the difference is whether the objection was preserved as a matter of, I guess, substance is sort of a shorthand for that, but whether the particularized findings objection was required in this context. Well, if it's procedural, do you agree that you're under plain error? If this Court's case law requires a separate objection for particularized findings, then yes, we are on plain error, but I'm not sure that that's the standard that applies here. Why aren't you... Why are you unsure? Just because of what I mentioned a minute ago. You're just confused about the cases we have out there? No, because the language of Dunnegan seems to suggest that there's an automatic trigger, that there shouldn't be an additional requirement that defense counsel object to the lack of particularized findings. Well, shouldn't the rule be in the act, if in doubt, object as a matter of trial tactics or trial... If I was a trial lawyer and this was my case, yes, but I don't know that that's what this sort of a prudential matter, sure, but as a matter of law, I don't know that the cases are entirely clear on this point. What was the nature of your objection, Malone? Again, there's a little bit of confusion about that. There was some discussion about what Mr. Chevron said to the police officers, but then in the PSR, the PSR writer says that defense counsel objected based on the exact grounds here, or based on that the defense counsel didn't believe that there was a perjurious testimony in his defense, and then the PSR writer says, I'm going to accept the court's findings as to that point. Of course, the government said that Mr. Chevron did commit perjury and did provide false testimony. There were a couple of different things going on, but it's pretty clear that this objection was preserved below. Well, the court did say, I find that obstruction of justice is appropriately added, which I find was unfounded in fact and law. Is that your objection? That was the district court's finding. Yeah, okay. And the court also said that the whole defense was fabricated? I mean, I think in essence, he said that he did not credit the defense. Well, he found the defense was, quote, absolutely uncorroborated. Correct. How much more specific do you want? Do you want to say that when you said X, that was perjurous? Yes. And when you said Y, that was also perjurous? Yes. So if you say everything you said was a lie, would that be sufficient? No, because there are things that the district court didn't believe he was lying about.  Sure. And I think that, so the defense encompassed a lot of different elements. A large part of Mr. Shavarin's testimony was about his drug addiction and how that played into his getting into criminal activity and potentially drug trafficking. And those things, it's pretty clear from the sentencing transcript, the district court did believe. And so I think the problem is we don't know exactly which statement specifically. Well, we do, though, don't we? He said, he specifically talked about the facts that the defendant offered in support of the arrest. And he said they are as weak as could be. He talked about some mysterious car, as I recall, in front of his house. He later says that the problem is that he's lacking in detail. It's a false defense, meaning he's lying. It's completely bogus, the defense, and it's a charade. I mean, he basically, he talked about the lack of any facts supporting the duress defense and he said it was false. The issue is really for us whether there's sufficient, whether he sufficiently identified, at least even if it's general and not specific, the basis for the perjury. And don't we have that here? I think that... Can't we tell what he thought was perjurous, which was basically everything he testified about in terms of the duress defense? And I think that that's the tension here. I mean, I don't think a judge can just say everything you said was wrong. Well, there wasn't very much said, and that was the judge's problem, is he hardly had any facts to offer. He didn't say, who threatened his wife and children? When did that happen? What exactly happened? How did it happen? That's what the judge said. There is no detail, and that's the problem with the defense and why he believed it was false. Well, and I think that, again, there's sort of a difference between an uncorroborated and a vague defense and something that's false. I mean, I think, again, I think that the judge just needed to be a little bit more specific and zero in on particular aspects of what he said in order to apply the enhancement and then compare those to the Dunningan factors, because I think there's a big difference between something that's uncorroborated and something that's willfully materially false. Well, the judge said that. I mean, I think he did, he did that. He basically said, if this were true, if a cartel were threatening his wife and his children in the way he says they were very generally, he would have specifics about, he would know, he would remember, he would have testified about the who, the what, the when, the where, and there was none of that. So that is a finding of falsity. And, I mean, I think, again, you know, in my reply brief, I sort of say that it's unclear that those findings were actually applied to the obstruction of justice enhancement, because the structure of the sentencing was pretty clear. It was the obstruction of justice, and then whether he got acceptance points, then the rejection of the coercion, the coercion downward departure, and then I believe there was one other sentencing issue. And so those comments were not made with particular respect to the obstruction of justice enhancement. Well, how about the judge's statement that my personal view is that Mr. Chauvin took that witness stand and actually committed perjury. Now, how much more explicit must one be? I agree that's very explicit, but he says, in my view, it's not like a legal finding. So I still think that there's a little bit of ambiguity there. Well, you're saying he has to make a specific, numbered finding of fact, A. Finding of fact, B. And then conclusion of law, my conclusion of law based on A and B is that. I think in an ideal world, yes. I think that's what the cases are asking courts to do. And I think, especially as I said in my opening statement, Donegan is very clear that this is a particular area of risk, where there's a defendant who's going to trial on a coercion or duress defense and the jury rejects that defense, maybe as a matter of law, maybe the jury doesn't believe that the defendant proved the elements of duress or coercion. This is one of these areas where it's particularly sensitive and that's why I think there's a heightened importance here for the judge to make those findings and to make them in a methodical and accurate way. Does that answer your question? So I think I'd like to turn to the issue of, if we're on plain error, the issue of third prong, which I know that I'm kind of in murky waters here based on some of the comments that the judge made. But I do think that the third prong issue, all that's required for third prong is a reasonable probability of a different result. And I think, again, just based on some of the ambiguity in what the court said, this difference between uncorroborated versus false facts, some of the statements that the district court made about the defense being lawyer generated, that the district court flip-flops a little bit in his assessment of Mr. Chavarin at one point saying he's a liar and then at another point saying he's not a complete and total liar. I do think that... Well, I think the way I read that part of the transcript was the judge was saying I've got to give him credit. He said he thought his lawyers were leading him on these facts that he did come up with and that basically he didn't lie, he didn't come up with any additional facts. He didn't lie any further. He didn't take the bait, essentially. Sort of what I understood, but maybe I misread it. I mean, I think that there definitely... Your reading is not... I don't know. But I think there's enough... In my view, there's enough ambiguity that there's a reasonable probability that if this went back for re-sentencing, the judge actually looked at Dunnegan, read Dunnegan, and saw what was required and then looked at Massey and saw what was required, that the district court would have... may not have applied this enhancement in this particular context of duress and coercion. If there are no further questions, I'd like to reserve the remainder of my time. Thank you. Your turn. Good morning, Your Honor. It's Ryan Tinney on behalf of the United States. One of the principal reasons... Let's play it again. One of the principal reasons for the preservation rule is to forestall unnecessary appellate litigation. As this court explained in Gantt, this court does not abide appeals of alleged errors that could have been easily avoided by a timely objection. Everything that Mr. Shavarne is complaining about in this case could have been fixed with a timely objection. If he'd objected, if he thought there was a lack of specificity, that the district court did not comply with this court's prudential requirement, and if he'd said so, the district court could have pointed specifically to the statements that it thought were for jurors. If he thought that the district court was not tying its finding of perjury to the specific Dunnegan elements, he could have made that objection, and the district court could have walked through the analysis. But he didn't. His objection below was substantive, it wasn't procedural. If you look at page 6 of the sentencing transcript, what the objection was was, my client didn't commit perjury. But when the district court then goes forward and says, no, no, no, I think you did commit perjury, the defendant never stood up and said, I think your findings are unclear or not specific,  And this court has held in a variety of cases that there is a difference between preserving a substantive objection versus preserving a procedural objection. And it makes sense because if you think about what happens in appellate review, this court ends up engaging in a different kind of analysis of those two different kinds of claims. If he'd preserved and if he'd briefed on appeal, the substantive challenge, he'd be looking at the underlying evidence of perjury. But the claim that he's making in his brief, and I think this really came through in his reply brief, was a procedural challenge. What he's upset about is we don't know from the district court's statements what it was that the district court thought was perjurious. That's a procedural challenge. Flannery looked at this in this exact context. In fact, the exact same guideline enhancement. Flannery says that the defendant, if he's going to complain about a lack of findings, has to preserve that objection at the trial court. He didn't here. And so because he didn't, we're under plain error review. And under plain error review, his claim fails. We've briefed this under both the obviousness prong as well as under the prejudice prong. I think we're on solid ground on both. I'll begin with obviousness. Could you address, before you go on, her argument about the Dunnigan case? Please. Yeah, so this court has separated out its analysis of the Dunnigan elemental requirement for district courts versus the specificity. Under Dunnigan, the Supreme Court held that to establish the 3C1 enhancement, the district court's ruling must, quote, encompass all of the factual predicates for finding a perjury. I think the real gravamen of Mr. Chabarro's argument here is that the district court failed because it didn't identify legality and it didn't identify willfulness. But Dunnigan itself says that that's not required. Dunnigan's got this passage, which we quote in our review, that it would be preferable for a district court to do so, but it then says it's not required. Dunnigan says this very specifically. And if there was any doubt, this court has repeatedly held that implicit findings can be enough. Cayetano, I think, is clear on this. The language from that decision is that as long as the district court's ultimate conclusion was clear, it's enough. Hawthorne and Stoner both affirmed willfulness determinations, even though the district court had not specifically identified the willfulness requirement or the element. And so there's a long line of cases in which this court has taken a holistic look at the record and said, look, we can tell that the district court was finding materiality or we can tell that the district court was finding willfulness. And as long as you can tell that from context, Dunnigan says that's enough. And that's the case here. I mean, his two element arguments are about those two elements, willfulness and materiality. I think materiality is probably the easiest from the government's perspective. All of the arguments, both the trial and in the sentencing proceedings, were about whether his coercion testimony was enough to get him out of these charges. This was the issue to be decided at trial. And if you look at the language of the Guideline of Enhancement, that's enough. The language it uses is if the defendant obstructed justice, quote, with respect to the investigation, prosecution, or sentencing of the offense. So here we've got a clear defense, we've got clear testimony in support of that defense, and it goes to the heart of the case. You also have a similar dynamic with respect to sentencing. The argument of sentencing sort of branched out into two different arguments, about the downward departure under 5K, as well as the government's request for the 3C1 obstruction enhancement. And so if the standard is relevancy, which it is, then as long as the perjury determination relates to one of those issues, materiality is satisfied. And it's hard to read this record otherwise. He also makes a willfulness argument, but as the Supreme Court explained in Dunnegan, willfulness in this specific context has a specific meaning. It has to do with a lack of confusion, or a lack of mistake. I think that the defendant, to be honest, would be on more solid ground if the district court had stopped its analysis with simply saying, uncorroborated. Because if all you had was language about testimony being uncorroborated, maybe you could sort of play in the realm of ambiguity. What about the fact that you do have this sort of difficult to interpret statement from the district court about, you know, that he was kind of bothered by the attorneys seeming to want to lead him into talking about the facts, and yet he didn't go there. He didn't think that he lied in response to those questions. Is the way I read it. And isn't that somewhat indicative that there was no willfulness finding? No, I think you have to read that statement in context too. On that page, which I believe is page 16 of the sentencing transcript, the district court had just finished walking through, repeatedly, that he thought that Mr. Shavar and I testified falsely. It then points out, look, a lot of this came across examination, and you at least weren't led to lie about dates and places. And then on page 17, that's the line, at least you weren't a complete and utter liar. In other words, what the court is saying... Meaning what? Meaning you lied about these other things, but at least you didn't lie about these things too. But the fact that it's able to identify... Which things did he not lie about? The dates and places. That's the specific quote. So the fact that the district court thinks it's significant that he's not at least lying about dates and places, suggests in context that it really does think it's significant that he's lying about these other things too. So the fact that it's identifying areas about which he did not commit perjury doesn't negate its overall statement, which it repeats over and over, that he did commit perjury about other things. And this ties back really to the prudential requirement. The court, from pages 14 to 16 of the sentencing transcript, uses the word defense seven different times. This is not an isolated reference. It's not in passing. Over and over, the district court says you presented a false defense, and it uses the word defense. And if you look at this in context, the word defense is not an accent. This was a single count indictment. There was a single count trial, and there was a single defense. This was the only defense at trial. The only thing he was arguing to the jury was, I should be acquitted because I was forced to do this because of threats. You might have a problem. Let me just put this part on the table. You might have a problem in a different case in which there were multiple charges, there were multiple defenses, defendants contesting this element of this charge, this element of this defense. What the district court says in that context is your defense was untruthful. It might be hard to glean on appeal what it was talking about. But here, the only thing he's charged with is possession of contempt of distribution. His only defense is coercion. The only thing he says to support that defense is, I was threatened and my family was threatened, and that's why I did this. So when the district court comes back to it at sentencing and repeatedly uses that word defense, your defense was false. What it's saying to everybody in the courtroom is, those claims you made to support that defense, that coercion defense, those claims were false. And I think that's why, with respect to opposing counsel, I think the reply is a little too broad here. The reply's response to this is it would be impossible to determine from the government's argument what parts of Chevron's testimony fell within the district court's determination. What parts did not, but if you look at it in the light of that context, it is clear how to draw those lines. Anything that related to his coercion defense fell within the district court's determination, and anything that didn't, didn't. And so let's just use two examples. He testified at the outset of his testimony about his background, where he was born, where he was raised, that sort of thing. Whether he was born in Mexico or raised in Arizona doesn't mean he was coerced, and it doesn't mean he wasn't coerced. So it wouldn't have been part of the defense. He also testified that he was a drug addict. We're closer, but whether he's a drug addict doesn't mean he was coerced, and it doesn't mean that he wasn't. By contrast, in the trial testimony, he talks about these threats to his life. If that's true, he's coerced. He talks about threats to his family's life. If that's true, he's coerced. And so when the district court keeps coming back to that word, I don't think it's an accident. He keeps saying, look, your defense was false. Everything that was tied to the elements of coercion fit, and if it wasn't, it wasn't, and that's how you can draw that line. Again, for the reasons we've articulated, we think this is clearly a plain error, an unpreserved claim. So for those reasons, there was no obvious error. I don't think you can say on this record that it would have been obvious to the court that it had not identified the subject or the area of the perjured testimony. But even if you concluded that as briefly just prejudice, this court in the shape of Donaldson applied the ordinary prejudice standard to this kind of claim. You have to be convinced by the defendant that there's a reasonable probability that if you send this back, something different is going to happen. The district court, under the prudential requirements, is going to be unable to point to a single statement, or under the Dunnegan problem, that it would not find the elements. And the record, and more specifically the vehemence of the district court's language, suggests otherwise. It'd be one thing, again, if all the court had said was, you know, your testimony was vague, or it was uncorroborated. But it uses words like bogus and charades. The whole thing was a charade. And so the court very consciously takes its own analysis out of the realm of mere vagueness, and into a place of deliberate lies. It's hard to imagine that a district court that would say to a defendant in a sentencing hearing, I think you put on a charade, or I think your whole story was bogus, if asked, couldn't identify a single statement that prompted it to say that. It wouldn't have used such strong language if it didn't have something in mind. So too with the Dunnegan elements. It's hard to imagine that if the objection had been made, and the court were asked to clarify whether it thought he was the same court that just moments earlier used words like bogus and charade, would have then stopped and said, you know, I don't think that was intentional. That language suggests the opposite. I'd be happy to address any other questions the court may have. Thank you. Just briefly, I'd like to address the government's argument about whether the word defense is ambiguous. I'd like to start with the government's statement of facts. The government's statement of facts says Chevron testified to support his defense. In the direct examination, he testified that he was addicted to heroin and sometimes delivered drugs to pay off his debts. We don't know if the district court didn't credit that statement. It seems pretty uncontroversial that that was probably true. Mr. Chevron testified that he had a few years earlier been caught by police while attempting to deliver drugs. Again, it's pretty clear that that's true. No one really contested that, and this is all encompassed in the idea of Mr. Chevron's defense. He said that when he couldn't pay, or he said that then he goes into questions about the cartel, that when he couldn't pay, a guy named Chewy gave him drugs to sell that he couldn't pay off the debt. Was that the particular statement that the court took issue with? We don't know. And then the statement of facts kind of goes through and gets more and more specific as it goes along. But again, there are parts of the defense that were true and that nobody was contesting, and then there were parts that weren't true and that the defense lawyer was presenting as part of the defense. And again, I just don't think that this word defense is clear enough to satisfy the Massey standard that requires specificity and again requires a particular statement to be evaluated against the Dunnigan factors. So if there are no further questions, I'd ask this court to remand for resentencing. Thank you. Thank you both very much. We appreciate your arguments, and the case will be submitted. We'll take it under advisement. And I think that's our last case for the day, so we appreciate the hospitality here in Salt Lake City. We'll be in recess, though, until tomorrow morning at 8.30. Thank you.